UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                                         CRIMINAL NO. 3:16-CR-40-DPJ-FKB

KHALIL SLAYTON, JEROME BENAMON,
AND EDWARD JAMES MOBLEY

ORDER

This criminal action is before the Court on multiple pre-trial motions, which the Court will address in turn.

1. Motion to Reconsider Release of Testing Data [105]

The Court first turns to the Government's motion to reconsider the Court's release of psychiatric testing data [105]. Defendant Jerome Benamon opposes the motion.

On November 17, 2017, the Court entered an Order [103] granting Benamon's request to allow access to data collected during a Court-ordered psychiatric evaluation of co-defendant Khalil Slayton, who intends to testify for the Government against Benamon. Specifically, Benamon sought: (1) the Personality Assessment Inventory (PAI) and (2) the Validity Indicator Profile (VIP). The Government now asks the Court to reconsider that decision and decline to release the data.

The Government advances four arguments: (1) Benamon's expert, Dr. Mark Webb, is not qualified to interpret the data; (2) the data does not contain any *Brady* or *Giglio* material and "has nothing to do with the underlying facts at issue"; (3) the VIP was not scored due to a software problem so the raw data is meaningless; and (4) Slayton did not consent to disclosure of this data. Gov't's Mot. [105] at 2–3.

To begin, the Government filed no response to the motion seeking release of this data, and while it did oppose release in a telephonic conference, the Court does not recall the Government making its current arguments before the disputed Order was entered. On that basis, reconsideration could be denied.

Nevertheless, Benamon has substantively responded and agrees that his expert, Dr. Mark Webb, is not trained to interpret the data, so he is seeking to retain a second expert—a psychologist with the required training. The addition of such an expert may also resolve the unscored-data problem the Government raises, and that individual should be given an opportunity to review the data.

As to the Government's argument that Slayton did not consent to disclosure of this data, it does not cite any supporting authority. And Slayton himself neither joined in the motion for reconsideration nor raised any objections to Benamon's request before the Court initially granted it. *See* Slayton Obj. [99] at 3 (arguing against new mental evaluation and opposing *admissibility* of *different* information found in original mental evaluation). In any event, the Court will take appropriate steps to protect the information but finds that Benamon's rights outweigh the privacy concerns the Government asserts on Slayton's behalf.

Finally, the Court does not discount the Government's argument that the data "has nothing to do with the underlying facts at issue." Gov't's Mot. [105] at 3. In fact, the Court's prior Order referenced the Government's concerns regarding the admissibility of potential testimony regarding Slayton:

> At this stage in the case, the Court is not prepared to say whether potential testimony regarding Slayton's Anti-Social Personality Disorder will be admissible. But it seems that the underlying data may speak to the concerns the Government raises in its Motion to Exclude. And even if Dr. Webb is eventually excluded, there may still be a reasonable basis to cross examine Slayton regarding the diagnosis. The underlying data and test results may speak to the admissibility

> of those questions and offer impeachment material to Defendant. The Court therefore concludes that the materials should be produced. Whether they are admissible is an issue for another day.

Order [103] at 2. The Court's mind is unchanged. Slayton is a key government witness, and there is potential impeachment value to the evidence. While the Government was within its rights to vigorously oppose the motion, the data should now be produced.

Accordingly, the Government's motion for reconsideration [105] is denied. If the Court grants Benamon's motion to retain a qualified expert, it will forward the data to him for examination.

2. Motions for Psychiatric Exam [92, 94]

In addition to the test data the Court has now ordered the Government to produce from Slayton's Court-ordered psychiatric examination, Defendants Benamon and Mobley also seek an order forcing Slayton to undergo a second psychiatric examination conducted by Benamon's retained expert. *See* Def. Benamon's Mot. [92]; Def. Mobley's Joinder [94]. Both Slayton and the Government oppose the request. *See* Gov't's Resp. [96]; Slayton Objection [99].

The Fifth Circuit has held that "the defendant has the right to explore every facet of relevant evidence pertaining to the credibility of those who testify against him." *United States v. Partin*, 493 F.2d 750, 763 (5th Cir. 1974). Accordingly, in some contexts the court has held that hospital records are admissible impeachment evidence. *See, e.g.*, *id.* Whether the records in this case are admissible remains to be seen, but forcing a witness to undergo a second psychiatric examination before a retained expert is a different issue.

Such requests were more common before Federal Rule of Evidence 601 declared that "[e]very person is competent to be a witness." Before Rule 601, parties challenging a witness's competence sometimes requested psychiatric evaluations, and district courts enjoyed "broad

3

discretion in determining whether to order" them. *United States v. Jackson*, 576 F.2d 46, 49 (5th Cir. 1978). But, in making that decision, courts were required to consider the "infringement on a witness' privacy." *Id.* As the Fifth Circuit stated:

> Such an examination may seriously impinge on a witness' [sic] right to privacy, very high on any scale of balancing rights. The examination itself could serve as a tool of harassment, and the likelihood of an examination could deter witnesses from coming forward, producing a chilling effect on crime detection.

*Id.*

In *United States v. Jackson*, the criminal defendant requested psychiatric examinations of the government's witnesses because they were suspected drug addicts. *Id.* at 48. Although the defendant sought the examinations to challenge competency, he also claimed that they would be "relevant for impeachment purposes." *Id.* The district court refused, and the Fifth Circuit affirmed, noting the witnesses' right to privacy and the fear of a chilling effect. *Id.* at 48–49.

The *Jackson* holding is even more compelling now that Rule 601 removes the competency component of Jackson's argument. And other cases have reached the same result. *See United States v. Cuda*, 62 F.3d 395, 1995 WL 450225, at *5 (5th Cir. 1995) (affirming denial of psychiatric evaluation and noting that they are "a significant intrusion on privacy and dignity"); *United States v. Escamilla*, 590 F.2d 187, 190 (5th Cir. 1979) (same).

Here, the Court recognizes that Slayton is a key witness. But there has already been a Court-ordered psychiatric evaluation that was produced to Defendants. The Court further ordered the Government to produce the raw data supporting the report so Defendants' experts could independently review it. Whether all of that leads to admissible evidence remains to be seen, but the Court finds that the need for another examination does not outweigh Slayton's asserted rights, the risk of harassment, and the potential chilling effect of Defendants' request. Finally, the Court does not believe that Slayton's request for a psychiatric evaluation conducted

4

at the Court's direction somehow waives his right to resist a second examination conducted by an expert Defendants have selected and retained. Accordingly, the motions [92, 94] are denied.

**SO ORDERED AND ADJUDGED** this the 12th day of January, 2018.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE